UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| HORTENCIA MARIA HERNANDEZ, an individual, | Case No. 6:20-cv-00669-MK<br>**FINDINGS AND**<br>**RECOMMENDATION** |
| Plaintiff, | |
| vs. | |
| SIRI AND SON FARMS, INC., an Oregon corporation, | |
| Defendant. | |

**KASUBHAI,** United States Magistrate Judge:

Plaintiff Hortencia Maria Hernandez ("Plaintiff") filed this action against Defendant Siri and Son Farms, Inc. ("Defendant") alleging, as relevant here, violations of Sections 1831 and 1832 of the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. §§ 1831(e), 1832(a), and 1832(c); Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981; and Oregon state law, ORS §§ 652.145, 652.150. Compl. ¶¶ 49–57, ECF No. 1. Defendant now moves for summary judgment as to all claims. *See* Def.'s Mot. Summ. J., ECF No. 14 ("Def.'s

Mot."). For the reasons that follow, Defendant's motion should be GRANTED in part and
DENIED in part.

## BACKGROUND

Defendant is an Oregon corporation that grows seasonal produce. Defendant employs
agricultural workers for its operations. Siri Decl. ¶¶ 2–3, ECF No. 16.

In 2017 and 2018, Defendant successfully applied for the H-2A program and employed
foreign workers ("H-2A workers"). Any employer participating in the H-2A program must offer
to U.S. workers "no less than the same benefits, wages, and working conditions that the
employer is offering, intends to offer, or will provide to H-2A workers." 20 C.F.R. § 655.122.
An employer must offer and pay the Adverse Effect Wage Rate ("AEWR") to H-2A workers and
to U.S. workers in corresponding employment during the H-2A recruitment period.[1] 20 C.F.R. §
655.1300. The regulations governing the H-2A program define "corresponding employment" as
the "employment of workers who are not H-2A workers by an employer . . . in any work
included in the job order, or in any agricultural work performed by the H-2A workers." 29
C.F.R. § 501.3. To qualify as corresponding employment, "the work must be performed during
the validity period of the job order, including any approved extension thereof." *Id.*

Defendant's 2018 job order contained the following description for its "Specialty
Harvester/Buncher/Quality Judge/Shipping Prep" position:

> This position harvests crops that require cutting with knives or other tools,
> bunching or banding with a rubber band or twistie; handling gently to avoid
> bruising or a disheveled bunch; counting accurately according to each crop's
> specific box count; judging quality (including gradations) of each crop to meet

---

[1] The AEWR is the "minimum wage rate" that must be offered to H-2A workers as well as U.S. workers hired by
employers into corresponding employment. 20 C.F.R. § 655.1300. The purpose of the AEWR is to "ensure that the
wages of similarly employed U.S. workers will not be adversely affected." *Id.* In addition, if a worker is paid by the
hour, the H-2A program requires employers to "pay at least the AEWR, the prevailing hourly wage rate, the
prevailing piece rate, the agreed-upon collective bargaining rate, or the Federal or State minimum wage rate, in
effect at the time work is performed, whichever is highest, for every hour or portion thereof worked during a pay
period." 20 C.F.R. § 655.122(l).

Page 2 — FINDINGS AND RECOMMENDATION

> customer and industry standards; being able to perform the job while a supervisor tracks progress to ensure employees are meeting minimum requirements; being able to lift, carry over distance, repetitively stack and unstack boxes up to 65lbs. to maximize transportation efficiency; being able to perform tasks for extended periods of time often in the elements sitting on knees (for low to the ground crops) or standing to pack and palletize crops. Employees are expected to work through the end date of the contract period: April 10, 2018 - Dec 18, 2018.

Siri Decl., Ex. 5 at 3, ECF No. 16-2. The form also indicated Defendant's preference for applicants with three months of experience and included box counts as well as minimum requirements for radish, spinach, cilantro, green onion, parsley, and kale. *Id.* at 7. Defendant's 2017 job order contained a similar description for the "Specialty Harvester/Buncher" position. Siri Decl., Ex. 4 at 3, ECF No. 16-1.

Defendant maintains that it had difficulty recruiting domestic workers for the "Specialty Harvester" position because it required a more specialized skillset compared to the "General Harvester" position. Siri Decl. ¶ 8, ECF No. 16. According to Defendant, the distinction between Specialty Harvesters and General Harvesters is that only Specialty Harvesters harvest and bunch radishes, spinach, cilantro, green onions, parsley, and kale. Siri Decl. ¶ 10, ECF No. 16. Specialty Harvesters are paid the AEWR, which is higher than a General Harvester's regular pay. Siri Decl. ¶ 9, ECF No. 16. In 2017, the AEWR for Oregon was $13.38. Bernasek Decl., Ex. 2, ECF No. 15-2.

In 2016 and 2017, Plaintiff worked for Defendant as a seasonal agricultural worker. Hernandez Decl. ¶¶ 4, 10, ECF No. 22. Plaintiff is a U.S. citizen. Hernandez Decl. ¶ 2, ECF No. 22.

In 2017, Plaintiff harvested and cut peppers, squash, carrots, and onions; performed work that required a knife or other tools with crops such as cilantro and kale; bunched and banded carrots; handled crops to avoid bruising; and made quality decisions regarding individual crop

selection for harvesting. Hernandez Decl. ¶¶ 11–15, ECF No. 22. Plaintiff saw H-2A workers performing the same work as her, harvesting the same crops as her, and working on various crops that were not radish, spinach, cilantro, green onion, parsley, or kale. Hernandez Decl. ¶¶ 18–19, ECF No. 22.

Defendant did not pay Plaintiff AEWR wages for most of 2017. Hernandez Decl. ¶ 17, ECF No. 22; *see also* Siri Decl. ¶ 17, ECF No. 16 ("Hernandez was not engaged in corresponding employment when she worked for Siri so she was not entitled to AEWR wages."). Defendant asserts that Plaintiff worked as a General Harvester and never harvested or bunched radishes, spinach, cilantro, green onions, parsley, and kale and was therefore not entitled to the higher AEWR wages. Siri Decl. ¶ 10, ECF No. 16. Plaintiff's regular wage rate was $11.50.[2] Siri Decl., Ex. 6, ECF No. 16-3.

In July 2018, Plaintiff again applied for a job with Defendant. Siri Decl. ¶ 12, ECF No. 16. According to Defendant, Plaintiff did not apply for the Special Harvester position. *Id.* The job application, titled "Application for Seasonal Employment," did not specify to which position Plaintiff applied.[3] Siri Decl., Ex. 7, ECF No. 16-4. On this application, Plaintiff listed her phone number, affirmed her employment eligibility, indicated that she worked for Defendant in the preceding year, and indicated that she had agricultural or horticultural experience within the last five years. *Id.* However, Defendant told Plaintiff no work was available at the time she submitted her application. Hernandez Decl. ¶¶ 25–26, ECF No. 22.

---

[2] During two pay periods in 2017 when H-2A workers worked alongside Plaintiff, Defendant paid Plaintiff the AEWR of $13.38. Siri Decl. ¶ 17, ECF No. 16.
[3] Defendant did not provide the Court with a translated copy of the application. The title of the application is "Aplicación Para Trabajo De Temporada" and the contents are as follows:
     ¿Al tiempo de empleo, puede verificar su eligibilidad para trabajar en los EEUU? Sí
     ¿Ha trabajado con nosotros anteriormente? Sí; Si sí, ¿cuando? el año pasado
     . . .
     ¿Ha tenido Ud. experiencia en agricultura o horticultura en los últimos 5 años? Sí
Siri Decl., Ex. 7, ECF No. 16-4.

Defendant did not affirmatively recruit Plaintiff for the Specialty Harvester position. Siri Decl. ¶ 13, ECF No. 16. Defendant maintains that Plaintiff worked as a General Harvester and that Defendant was not aware of any prior experience Plaintiff had as a Specialty Harvester. *Id.* However, when Plaintiff began working for Defendant in 2016, she already had more than three months of experience with cleaning, harvesting, bunching, and packing kale, radishes, spinach, cilantro, and green onions. Hernandez Decl. ¶¶ 6–7, ECF No. 22. Defendant never asked about her previous work experience. Hernandez Decl. ¶ 8, ECF No. 22.

Defendant attempted to contact Plaintiff regarding work on three separate occasions in 2018, but Plaintiff did not answer these calls. Siri Decl. ¶¶ 14–16, ECF No. 16. Plaintiff was unaware that Defendant called and never received any voicemails from Defendant. Hernandez Decl. ¶¶ 29–30, ECF No. 22.

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630.

## DISCUSSION

Defendant moves for summary judgment on all three of Plaintiff's claims. First, Defendant asserts that summary judgment is appropriate as to Plaintiff's AWPA claim because: (1) a worker's claim regarding an alleged H-2A violation cannot alone provide a private claim for relief; (2) Plaintiff was not engaged in "corresponding employment" with the H-2A workers and therefore Defendant did not violate any term of the H-2A program; and (3) Defendant did not knowingly provide false or misleading information to Plaintiff regarding the terms or conditions of employment. Second, Defendant asserts that summary judgment is appropriate as to the Section 1981 claim because: (1) Plaintiff's discrimination claim is based on national origin which is not authorized by Section 1981; and (2) Defendant had a legitimate non-discriminatory reason for not hiring Plaintiff. Lastly, Defendant asserts that summary judgment is appropriate as to the Oregon state law claim because Plaintiff was not engaged in "corresponding employment" and therefore was not entitled to AEWR wages. Plaintiff disagrees and argues that: (1) Plaintiff was engaged in "corresponding employment" and therefore Defendant violated the terms of the H-2A program under 29 U.S.C. § 1832(a) and § 1832(c); (2) Plaintiff's Section 1981 claim is a citizenship or "alienage" claim; and (3) Plaintiff is entitled to penalty wages under Oregon state law for Defendant's failure to pay Plaintiff AEWR wages.

The Court concludes that: (1) Plaintiff has raised genuine issues of material fact as to whether Defendant violated the terms of the H-2A program under 29 U.S.C. § 1832(a) and §

1832(c); (2) Plaintiff's Section 1981 discrimination claim is based on citizenship or "alienage;" and (3) Plaintiff has raised a genuine issue of material fact as to whether she was entitled to AEWR wages and related penalty wages under Oregon state law. Defendant's motion should be denied as to Plaintiff's AWPA claim under 29 U.S.C. § 1832(a) and § 1832(c), Section 1981 claim, and Oregon state law claim. However, Defendant's motion should be granted as to Plaintiff's AWPA claim under 29 U.S.C. § 1831(e) because Plaintiff has failed to show that Defendant knowingly provided false or misleading information "concerning the terms, conditions, or existence of agricultural employment *required to be disclosed by subsection (a), (b), or (c)*." 29 U.S.C. § 1831(e) (emphasis added).

## I.    AWPA Claim

### A.    Private Right of Action

Defendant first argues that it is entitled to summary judgment on Plaintiff's AWPA claim because "[a] worker's claim regarding an alleged H-2A violation cannot alone provide a private claim for relief." Def.'s Mot. 6. Defendant further argues that "[AWPA] provides a private right of action for violations of its provisions, [but] the H-2A program provides no such similar private right of action and this alone should be sufficient to grant [Defendant's] motion." Def.'s Mot. 10.

Congress adopted the AWPA out of frustration with prior efforts to regulate the abuses of agricultural labor contractors. *See* H.R. No. 885, 97th Cong., 2d Sess. at 2–3 (1982). The purpose of the AWPA is to "remove the restraints on commerce caused by activities detrimental to migrant and seasonal agricultural workers" as well as to "assure necessary protections for migrant and seasonal agricultural workers[.]" 29 U.S.C. § 1801. Courts have noted that the AWPA is a remedial statute and should be construed broadly to effectuate its goals. *Escobar v. Baker*, 814 F. Supp. 1491, 1500 (W.D. Wash. 1993) (citing *De La Fuente v. Stokely-Van Camp,*

*Inc.*, 713 F.2d 225, 234 (7th Cir. 1983)); *see also Barajas v. Bermudez*, 43 F.3d 1251, 1260 (9th

Cir. 1994) (noting the AWPA's remedial and humanitarian purposes). The AWPA provides a

private right of action for "[a]ny person aggrieved by a violation of this chapter or any regulation

under this chapter by a farm labor contractor, agricultural employer, agricultural association, or

other person[.]" 29 U.S.C. § 1854. Under Section 1832(a) of the AWPA, for example, an

agricultural employer which employs any seasonal agricultural worker "shall pay the wages

owed to such worker when due." 29 U.S.C. § 1832(a).

      Under the H-2A program, an employer can bring foreign H-2A workers into the United

States only if the employer certifies that:

> (A) there are not sufficient workers who are able, willing, and qualified, and who
> will be available at the time and place needed, to perform the labor or services
> involved in the petition, and
>
> (B) the employment of the alien in such labor or services will not adversely affect
> the wages and working conditions of workers in the United States similarly
> employed.

8 U.S.C. § 1188. In addition, the employer "must comply with all applicable Federal, State and

local laws and regulations, including health and safety laws" during the H-2A employment

period. 20 C.F.R. § 655.135.

      Here, Plaintiff's arguments do not rest on the regulations governing the H-2A program

but rather rest on the statutory protections granted to Plaintiff by the AWPA. *See, e.g.*, *Jimenez v.

GLK Foods LLC*, 2016 WL 2997498, at *11 (E.D. Wis. May 23, 2016) (finding that plaintiff

properly asserted claims under the AWPA for defendant's alleged H-2B program violations).

Plaintiff is an AWPA-covered worker claiming that Defendant: (1) failed to pay all wages owed

in violation of § 1832(a) of the AWPA; (2) violated the terms of their working arrangement in

violation of § 1832(c) of the AWPA; and (3) knowingly provided false or misleading

information concerning the terms, conditions, or existence of available employment in violation of § 1831(e) of the AWPA. As such, Plaintiff has properly asserted claims under the AWPA for Defendant's alleged violations of applicable statutes governing the H-2A program.

**B.     Corresponding Employment**

Defendant also asserts that "[t]here is no evidence to support the claim that [Plaintiff] was not paid all of the wages owed to her for the hours she worked for [Defendant]." Def.'s Mot. 11. However, Defendant correctly notes Plaintiff "claims that [Defendant] failed to pay wages owed to her, which, if true, would be a violation of AWPA as provided in 29 U.S.C. § 1832(a)." Def.'s Mot. 10–11. Defendant argues that it was not obligated to pay Plaintiff the AEWR because she was not engaged in corresponding employment as a Specialty Harvester. Def.'s Mot. 11.

As noted, under Section 1832(a) of the AWPA, an agricultural employer which employs any seasonal agricultural worker "shall pay the wages owed to such worker when due." 29 U.S.C. § 1832(a). Courts have noted that wages "may be defined by federal, state, and local laws" and that "[f]ailure by an employer to pay those wages constitute violations of the AWPA." *Valenzuela v. Giumarra Vineyards Corp.*, 619 F. Supp. 2d 985, 989 (E.D. Cal. 2008); *see also Medrano v. D'Arrigo Bros. Co. of Cal.*, 125 F. Supp. 2d 1163, 1167 (N.D. Cal. 2000) ("Section 1832(a) does not make specific reference to federal or state law, and the Act certainly does not indicate that an employer's obligation to pay may arise only from the AWPA itself.").

An employer participating in the H-2A program must offer and pay the AEWR to H-2A workers and to U.S. workers hired by that employer into corresponding employment during the H-2A recruitment period. 20 C.F.R. § 655.1300. The regulations governing the H-2A program define "corresponding employment" as the "employment of workers who are not H-2A workers by an employer . . . in any work included in the job order, or in any agricultural work performed

by the H-2A workers." 29 C.F.R. § 501.3. To qualify as corresponding employment, "the work must be performed during the validity period of the job order, including any approved extension thereof." *Id.*

Here, Plaintiff claims that she worked alongside H-2A workers and performed some of the same tasks listed on Defendant's Specialty Harvester job description. *See* Hernandez Decl. ¶¶ 11–19, ECF No. 22; *see also* Siri Decl., Ex. 5, ECF No. 16-2. Plaintiff also harvested cilantro and kale using a knife or other tools. Hernandez Decl. ¶ 12, ECF No. 22. It is also undisputed that Defendant paid Plaintiff AEWR wages during two pay periods in 2017 when H-2A workers worked alongside Plaintiff. Siri Decl. ¶ 17, ECF No. 16. Regardless of whether "corresponding employment" depends on the crops harvested, tools used, or skills employed, Plaintiff testified that she performed the same work as H-2A workers on the same crops using the same tools. Consequently, issues of fact remain as to whether Plaintiff was engaged in "corresponding employment" such that she was entitled to the AEWR for the work she performed in 2017. As such, summary judgment is not appropriate as to Plaintiff's AWPA claim under Section 1832(a) and Defendant's motion should be denied.

## C. Working Arrangement

Defendant next asserts that Plaintiff has failed to establish the existence of a "working arrangement" between the parties. Def.'s Reply 9, ECF No. 27. Plaintiff argues that Defendant violated the terms of its working arrangement with Plaintiff pursuant to 29 U.S.C. § 1832(c) by: (1) intentionally refusing to recruit and hire Plaintiff in violation of H-2A program regulations; and (2) failing to pay Plaintiff the AEWR for the work she performed in 2017. Compl. ¶ 49, ECF No. 1.

Under Section 1832(c), an agricultural employer cannot, without justification, "violate the terms of any working arrangement" made by that employer with any seasonal worker. 29 U.S.C. § 1832(c). Some courts have found that a working arrangement under the AWPA "does not automatically encompass any and all statutes and regulations governing agricultural employment." *Valenzuela v. Giumarra Vineyards Corp.*, 619 F. Supp. 2d 985, 993 (E.D. Cal. 2008). Other courts have reached the opposite conclusion. *See, e.g.*, *Elizondo v. Podgorniak*, 100 F. Supp. 2d 459, 463 (E.D. Mich. 2000) (determining that working arrangement "includes those aspects of a working relationship that are required by law"); *De La Cruz v. Gill Corn Farms, Inc.*, 2005 WL 5419057, at *7 (N.D.N.Y. Apr. 13, 2005) ("For purposes of the pending motion for summary judgment, the Court will assume that federal and state employment related laws are part of the working arrangement between Plaintiffs and Defendants."). In *Elizondo*, the court reasoned that AWPA liability "can arise when a term of employment is required to be part of the working arrangement" and held that field sanitation requirements under 29 C.F.R. § 1928.110(c) were "a mandatory term of the 'working arrangement'" between the parties. 100 F. Supp. 2d at 463. This Court agrees that federal employment-related laws are part of the working arrangement between an agricultural employer and an agricultural worker. Specifically, the Court finds that H-2A program requirements are mandatory terms of the working arrangement between Plaintiff and Defendant.

The H-2A program requires participating employers to keep any H-2A job opportunity "open to any qualified U.S. worker" and requires that "[r]ejections of any U.S. workers who applied or apply for the job must be only for lawful, job-related reasons, and those not rejected on this basis have been or will be hired." 20 C.F.R. § 655.135(a). In addition, the employer must contact its former U.S. workers "employed by the employer in the occupation at the place of

employment during the previous year and solicit their return to the job." 20 C.F.R. § 655.153.

Further, under the fifty percent rule, "the employer must provide employment to any qualified,

eligible U.S. worker who applies to the employer" from the moment foreign workers depart for

the employer's place of employment until fifty percent of the work contract period has elapsed.

20 C.F.R. § 135(d).

Here, it is undisputed that Defendant did not affirmatively recruit Plaintiff for the

Specialty Harvester position. Siri Decl. ¶ 13, ECF No. 16. Defendant claims that it was under

"no obligation to contact [Plaintiff] regarding possible work doing Specialty Harvesting"

because she had worked for Defendant as a General Harvester. Def.'s Mot. 10. Defendant also

argues that Plaintiff has offered no evidence indicating Defendant knew Plaintiff was qualified

for the Specialty Harvesting job. *Id.* However, Plaintiff testified that Defendant never asked

about her previous work experience and that she had more than three months of experience

harvesting the same crops listed on the "Specialty Harvester" job description when she began

working for Defendant. *See* Hernandez Decl. ¶¶ 6–8, ECF No. 22. Plaintiff also testified that she

harvested cilantro and kale as well as performed the same work as H-2A workers. Hernandez

Decl. ¶¶ 11–19, ECF No. 22. As discussed, regardless of whether "corresponding employment"

depends on the crops harvested, tools used, or skills employed, Plaintiff testified that she

performed the same work as H-2A workers on the same crops using the same tools. Accordingly,

issues of fact remain as to whether Plaintiff was engaged in "corresponding employment" such

that Defendant had a duty to recruit and hire Plaintiff. As such, summary judgment is not

appropriate as to Plaintiff's AWPA claim under Section 1832(c). Defendant's motion should be

denied.

Plaintiff also argues that Defendant's failure to pay her the AEWR rate violated both the "wages" provision under 29 U.S.C. § 1832(a) and the "working arrangement" provision under 29 U.S.C. § 1832(c). Compl. ¶¶ 49–50, ECF No. 1. Under Section 1832(c), an agricultural employer cannot, without justification, "violate the terms of any working arrangement" made by that employer with any seasonal worker. 29 U.S.C. § 1832(c). Wages are part of a working arrangement between parties. As discussed above, Plaintiff has sufficiently raised issues of fact as to whether she was engaged in "corresponding employment" such that she was entitled to the AEWR rate for the work she performed in 2017. Although Plaintiff may not collect damages for violations of both 29 U.S.C. § 1832(a) and § 1832(c) based on the same act, for the purpose of summary judgment the Plaintiff may proceed under both theories. As such, summary judgment is not appropriate as to Plaintiff's AWPA claim under Section 1832(c) and Defendant's motion should be denied.

### D.    False or Misleading Information

Defendant asserts that it did not make a false or misleading statement under 29 U.S.C. § 1831(e) because it had no obligation to contact Plaintiff about the Specialty Harvester position. Def.'s Mot. 11. Defendant also emphasizes that such prohibition only applies "when an offer of employment is made to such worker." Def.'s Reply 11, ECF No. 27 (citing 29 U.S.C. § 1831(a)).

Under Section 1831(e) of the AWPA, no employer "shall knowingly provide false or misleading information to any seasonal agricultural worker concerning the terms, conditions, or existence of agricultural employment required to be disclosed by subsection (a), (b), or (c)." 29 U.S.C. § 1831(e). When an offer of employment is made to a worker, Section 1831(a) requires an agricultural employer "which recruits any seasonal agricultural worker" to "ascertain and, upon request, disclose in writing" information such as the place of employment, wage rates,

crops and kinds of activities the worker may perform, and the period of employment. 29 U.S.C. §
1831(a). Section 1831(b) requires agricultural employers to place a visible poster setting forth
the rights and protections afforded to workers under the AWPA. 29 U.S.C. § 1831(b). Section
1831(c) imposes various recordkeeping and information requirements on agricultural employers.
29 U.S.C. § 1831(c).

Here, Plaintiff claims that Defendant violated Section 1831(e) when it told her that there
were no jobs available. Pl.'s Resp. 22, ECF No. 21. Defendant argues that the prohibition applies
to agricultural employers only "when an offer of employment is made to [a] worker" under
Section 1831(a). Based on the plain reading of the statute, the scope of Section 1831(e) is limited
to the requirements listed in subsections (a), (b), or (c). The Court agrees with Defendant that the
disclosure requirements under Section 1831(a) are triggered only if an offer of employment is
made to a worker.

Plaintiff further claims that if there is a genuine dispute of material fact "as to exactly
what information an employer provided," then a jury must determine whether the information
was false or misleading. Pl.'s Resp. 22, ECF No. 21 (citing *Ruiz v. Mercer Canyons, Inc.*, 2015
WL 328894, at *4 (E.D. Wash. Jan. 23, 2015)); *but cf. Ruiz Torres v. Mercer Canyons, Inc.*, 835
F.3d 1125, 1134 (9th Cir. 2016) ("For the purposes of class certification, we need not presently
decide whether Plaintiffs' construction of Sections 1831(e) and 1821(f) of AWPA is correct, only
that it raises a common legal question."). However, even assuming what Defendant told Plaintiff
was misleading, Plaintiff's theory under Section 1831(e) fails. As explained above, the Court
finds that Plaintiff cannot make a showing that Defendant made a false or misleading statement
as to the terms, conditions, or existence of agricultural employment required to be disclosed by

the explicit terms in subsections (a), (b), or (c). As such, Defendant's motion should be granted
as to Plaintiff's AWPA claim under Section 1831(e).

## II.    Section 1981 Claim

Defendant asserts that it is entitled to summary judgment on Plaintiff's Section 1981
claim because: (1) Plaintiff's discrimination claim is based on national origin which is not
authorized by Section 1981; and (2) Defendant had a legitimate non-discriminatory reason for
not hiring her. Def.'s Mot. 12. Plaintiff claims that Defendant denied her employment
opportunities because it preferred non-citizen H-2A workers over U.S. workers like Plaintiff.
Pl.'s Resp. 23, ECF No. 21.

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall
have the same right in every State and Territory to make and enforce contracts, to sue, be parties,
give evidence, and to the full and equal benefit of all laws and proceedings for the security of
persons and property as is enjoyed by white citizens[.]" 42 U.S.C. § 1981(a). This statute
prohibits discrimination on the basis of alienage. *Sagana v. Tenorio*, 384 F.3d 731, 740 (9th Cir.
2004); *see also Jimenez v. Servicios Agricolas Mex, Inc.*, 742 F. Supp. 2d 1078, 1087 (D. Ariz.
2010) (finding that the rights protected under Section 1981(a) apply to both public and private
discrimination). The statute applies to both citizens and non-citizens. *Graham v. Richardson*, 403
U.S. 365, 377 (1971) (citing *Takahashi v. Fish & Game Comm'n*, 334 U.S. 410, 419 n.7 (1948)).
"Alienage discrimination is distinct from both national-origin and birthplace discrimination."
*Sagana*, 384 F.3d at 739 (citing *Anderson v. Conboy*, 156 F.3d 167, 171 n.5 (2d Cir. 1998)).

Defendant frames Plaintiff's claim as a national origin claim. Def.'s Mot. 13. Defendant
also argues that "when a specific nationality is invoked as the source of the discriminatory acts,
the claim is treated as a national-origin claim rather than an alienage claim." *Id.* The Court

declines to accept Defendant's framing of Plaintiff's claim. Plaintiff asserts that she was discriminated on the basis of her citizenship status because Defendant preferred workers who are not U.S. citizens. Pl.'s Resp. 23, ECF No. 21. The fact that status as a "U.S. citizen" can be invoked for both a U.S. citizen who claims discrimination based on citizenship status and a U.S. citizen who claims discrimination based on national origin does not automatically convert the former into a national origin claim. *Cf. Jimenez*, 742 F. Supp. 2d at 1087 ("[I]t does not follow that Americans would be unprotected from this type of discrimination, where non-citizens would be afforded this relief."). The heart of Plaintiff's claim is based on "alienage" or citizenship status. As such, Defendant's motion should be denied.

Defendant also asserts that Plaintiff's Section 1981 claim fails because Defendant had a non-discriminatory reason for not hiring Plaintiff. Def.'s Mot. 14. Defendant argues that it did not hire Plaintiff because she did not return Defendant's phone calls and did not apply to the Specialty Harvester position. *Id.* First, Plaintiff testified that she was not aware Defendant called and received no voicemails from Defendant. Hernandez Decl. ¶¶ 29–30, ECF No. 22. Second, Plaintiff applied for a job with Defendant in July 2018. Siri Decl. ¶ 12, ECF No. 16. The application form Defendant provided to Plaintiff did not specify to which position she applied. Siri Decl., Ex. 7, ECF No. 16-4. Because issues of fact remain, summary judgment is not appropriate as to Plaintiff's Section 1981 claim and therefore Defendant's motion should be denied.

### III.    Oregon State Law Claim

Finally, Defendant asserts that summary judgment is appropriate as to Plaintiff's Oregon state law claim because Plaintiff was not engaged in "corresponding employment" and therefore was not entitled to AEWR wages. Def.'s Mot. 14–15.

Under Oregon state law, whenever the employment of a seasonal farmworker terminates, "all wages earned and unpaid become due and payable immediately[.]" ORS § 652.145(1). In addition, "if an employer willfully fails to pay any wages or compensation of any employee whose employment ceases, as provided in ORS 652.140 and 652.145, then, as a penalty for the nonpayment, the wages or compensation of the employee shall continue from the due date thereof at the same hourly rate for eight hours per day until paid or until action therefor is commenced." ORS § 652.150(1).

As discussed above, issues of fact remain as to whether Plaintiff was engaged in "corresponding employment" such that she was entitled to the AEWR for the work she performed in 2017. As such, summary judgment is not appropriate as to Plaintiff's Oregon state law claim and Defendant's motion should be denied.

///

///

///

///

///

///

///

///

///

///

///

///

**RECOMMENDATION**

For the reasons above, Defendant's motion for summary judgment (ECF No. 14) should be GRANTED as to Plaintiff's AWPA claim under 29 U.S.C. § 1831(e) but DENIED as to Plaintiff's AWPA claim under 29 U.S.C. § 1832, Section 1981 claim, and Oregon state law claim.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(1) should not be filed until entry of the district court's judgment or appealable order.

The Findings and Recommendation will be referred to a district judge. Objections to this Findings and Recommendation, if any, are due fourteen (14) days from today's date. *See* Fed. R. Civ. P. 72. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED this 30th day of September 2021.


s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge